[No. 7,356.—In Bank.]

WELLS, FARGO & Co. v. THE STATE BOARD OF EQUALIZATION.

State Board of Equalization — County Boards of Equalization — Assessments—Construction of Constitution.—The *proviso* in § 9 of article xiii of the Constitution is to be read distributively (*reddendo singula singulis*); that is to say, as authorizing and empowering the State Board of Equalization to increase or lower the entire assessment roll of any county; and the County Boards to increase or lower the individual assessments upon the rolls of their respective counties. The State Board, therefore, has not the power to increase or lower any individual assessment; nor has a County Board the power to increase or lower the entire assessment roll.

Id.—Id.—Id.—Id.—Thornton, J., concurring, was of the opinion that the State Board has the power to raise or lower an individual assessment roll so as to make it conform to the true value of the property; but that the action of the State Board must succeed that of the County Board; and, where an assessment is to be raised, such action can only be taken in the county where the property is situated, and after due notice to the party interested.

Id.—Id.—Id.—Id.—Sharpstein, J., dissenting, was of the opinion that the State Board has power to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in the roll, and to make it conform to the true value in money of the property assessed.

Petition for the writ of prohibition. The State Board of Equalization had given notice to the petitioner to appear at Sacramento, and show cause why the assessment of the property of the petitioner should not be raised.

*George Cadwalader*, for the Plaintiff, cited Const. art. 13, § 9 ; Cooley on Taxation, 291 ; Pol. Code, § 3692 ; *Hannibal & St. Joseph R. R. Co.* v. *Board of Equalization*, 64 Mo. 294 ; *Adsit*

v. *Lieb*, 76 Ill. 200; *Tweed* v. *Metcalf*, 4 Mich. 590; *Case* v. *Dean*, 16 id. 24; Pol. Code, § 3692, subd. 9 (Amdt. of 1880).

*The Attorney-General*, for the Defendant, cited Const. art. 13, § 9; Pol. Code, §§ 3692, 3693, 3695 (Amdt. of 1880); *S. & V. R. R. Co.* v. *City of Stockton*, 41 Cal. 147; *Smith* v. *Judge*, 17 Cal. 551; *Bourland* v. *Hildreth*, 26 id. 161; *Pattison* v. *Board of Supervisors, etc.* 13 id. 175; *Cohen* v. *Wright*, 22 id. 293; *French* v. *Teschemaker*, 24 id. 518; *Hager* v. *Board of Supervisors*, 47 id. 223.

Ross, J.:

There is but a single question in this cause, and that relates to the construction of § 9 of article xiii of the Constitution, which reads as follows:

"A State Board of Equalization, consisting of one member from each Congressional district in this State, shall be elected by the qualified electors of their respective districts at the general election to be held in the year 1879, whose term of office, after those first elected, shall be four years, whose duty it shall be to equalize the valuation of the taxable property of the several counties in the State for the purposes of taxation. The Controller of State shall be *ex officio* a member of the Board. The Boards of Supervisors of the several counties of the State shall constitute Boards of Equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation; *provided*, such State and County Boards of Equalization are hereby authorized and empowered, under such rules of notice as the County Boards may prescribe, as to the county assessments, and under such rules of notice as the State Board may prescribe, as to the action of the State Board, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll."

On the part of the State Board of Equalization, it is contended, that by virtue of this section they have the power to

increase or lower any and every individual assessment in each and every county assessment roll within the limits of the State; and that, too, irrespective of any action on the part of the County Boards of Equalization in respect to the individual assessments upon the rolls of their respective counties.

If the State Board has such power, it is unquestionably a tremendous power. It can summon to the city of Sacramento each and every taxable citizen of the State, to show cause why his individual assessment upon the assessment roll of his county should not be increased. It can call there the farmer from San Diego, the miner from Siskiyou, the mechanic from San Francisco.

That such a power might readily lead to great abuses, does not admit of doubt. Such considerations, however, afford no reason for denying the power, if it does exist. They should only make us cautious in considering the question, which recurs, and is, What is the true and fair construction of the provision already quoted? Its meaning, when ascertained, we are bound to give effect to, whatever the consequences.

In the first place, the section in question provides for a State Board of Equalization, and also for County Boards of Equalization. They are all to be boards of *equalization*. To equalize is to make equal, to cause to correspond, or be like in amount or degree, *as compared with something*. The meaning of the term is important to be borne in mind. Now, looking at the provision of the Constitution upon the subject, we find that the duties of the State Board are declared to be " to equalize the valuation of the taxable property *of* the several counties in the State for the purposes of taxation"; and the duties of the County Boards are declared to be " to equalize the valuation of the taxable property *in* the county for the purpose of taxation." Then follows the proviso, the ambiguity of which must be sufficiently apparent to every one: " *Provided*, such State and County Boards of Equalization are hereby authorized and empowered, under such rules of notice as the County Boards may prescribe, as to the county assessments, and under such rules of notice as the State Board may prescribe, as to the action of the State Board, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment

of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll."

Reading the proviso as it is claimed on behalf of the State Board it should be read, that Board is authorized and empowered " to increase or lower the entire assessment roll, or any assessment contained therein," and exactly the same power is conferred on the County Boards in respect to the rolls of their respective counties.

For many reasons, it is manifest the proviso should not be so read. To do so would not only lead to the most glaring absurdities and serious conflicts between the respective Boards, but would make the proviso inconsistent with the body of the section, and contrary to the fundamental idea of equalization.

To illustrate : The County Boards of the respective counties are, in the body of the section, given the power " to equalize the valuation of the taxable property in the county"; that is to say, to compare the individual assessments upon the assessment roll, one with another, and make them equal. But how can a County Board, upon the theory of *equalization*, increase or lower the *entire* assessment roll ?

It is not pretended that the County Boards are given any power outside of the limits of their respective counties, and it is obvious they have none. No County Board can look to the assessment roll of any other county than its own. It therefore can have nothing with which to compare the assessment roll of its own county *as a whole ;* and yet the very idea of equalization, of necessity, presupposes something with which to compare the thing to be equalized. The construction contended for on the part of the State Board would compel us to hold, not only that the State Board has the same power as the respective County Boards to increase or lower any individual assessment in an assessment roll, but that the County Boards have the like power with the State Board to increase or lower the entire assessment roll of their respective counties, and that, too, without any power of *comparing* the roll with anything. If, as is contended, the State Board and the respective County Boards have each this power, let us see what absurd and serious consequences might follow : Suppose the County Board of a particular county

should lower the entire assessment roll of the county ten per cent., and the State Board should *increase* the entire assessment roll of the same county ten per cent. Which would constitute the valid assessment? Or, suppose the County Board of a particular county should increase an individual assessment upon the roll of the county, and the State Board should *lower* the same individual assessment; what then? It will not do to say that the State Board has appellate jurisdiction over the action of the County Boards in the exercise of powers expressly conferred by the Constitution on the County Boards. The Constitution has not given any such appellate jurisdiction, and there is no foundation for the assertion of any such power.

It is evident, therefore, that the reading of the proviso under consideration contended for by the State Board might, and probably would, lead to very serious and absurd results. . On the other hand, by reading the proviso distributively—*reddendo singula singulis*—the whole system provided for the equalization of taxes is symmetrical and harmonious, and accords with that manifest intent of local government which permeates almost every part of the Constitution. The County Boards of Equalization are familiar, or should be, with the property in their respective counties—far more so than the State Board, which, in the very nature of things, can have but a general idea of the relative value of the property in the repective counties. It was, therefore, eminently wise on the part of the framers of the Constitution to limit the powers of the State Board in respect to equalization, as we think they did do by the section under consideration, to the equalization of the assessment rolls of the various counties by comparing the assessment roll of each county with the roll of each and all the others, and thus make the assessment conform to the true value in money of the property contained in the respective rolls; and conferring on the local Boards—the County Boards—the power only to increase or lower the individual assessments upon the roll of their respective counties, and thus make them equal with each other, and equivalent to the value in money of the property assessed. Thus each Board becomes what the provision treats of—a board of *equaaliztion*. Each has its own appropriate functions to perform, which can be performed without conflict, and in entire

harmony with the other.   Applying the maxim already quoted, the provision clearly admits of this construction, and we have no doubt that it is its true meaning and intent.

Another consideration strengthens the construction we adopt. If the State Board can.interfere with individual assessments upon the assessment roll, it must examine all of the other individual assessments; for in that way alone can the assessments be *equalized*.   Now, the time allowed by the statute for the action of the State Board of Equalization is, and the time that can be allowed by any law that can be passed upon the subject must of necessity be, limited to a brief period; for the State Board certainly cannot act before the assessment rolls are made up, and must act before the taxes are paid.   It is perfectly plain that any time that could be allowed between these periods would make it impossible for the State Board to act upon the many thousand individual assessments within the State.   And we think it clear that the framers of the Constitution never intended that it should do so.

Demurrer overruled.

Let the writ issue as prayed for.

MORRISON, C. J., McKINSTRY, J., and MYRICK, J., concurred.

THORNTON, J.:

Strongly impressed with the importance of the questions presented for consideration, I proceed to examine them.   And here I desire to state, that it is most unfortunate that a Court should be called on under pressure as to time to pass on questions which, above all others, require the fullest consideration.   The power of taxation is broad and comprehensive, touching every citizen and resident of the State in their most sensitive interest. Where such a matter is submitted for adjudication, the tribunal to which such function is so trusted should have at least a reasonable time to determine and consider it.

The questions presented for consideration in this case relate principally to the interpretation of the 9th section of article xiii of the Constitution.   That·section is in these words:

"A State Board of Equalization, consisting of one member

from each Congressional district in this State, shall be elected
by the qualified electors of their respective districts at the gen-
eral election to be held in the year one thousand eight hundred
and seventy-nine, whose term of office, after those first elected,
shall be four years, whose duty it shall be to equalize the valua-
tion of the taxable property of the several counties in the State
for the purposes of taxation. The Controller of State shall be
*ex officio* a member of the Board. The Boards of Supervisors
of the several counties of the State shall constitute Boards of
Equalization for their respective counties, whose duty it shall be
to equalize the valuation of the taxable property in the county for
the purpose of taxation ; *provided*, such State and County Boards
of Equalization are hereby authorized and empowered, under such
rules of notice as the County Boards may prescribe, as to the
county assessments, and under such rules of notice as the State
Board may prescribe, as to the action of the State Board, to in-
crease or lower the entire assessment roll, or any assessment con-
tained therein, so as to equalize the assessment of the property
contained in said assessment roll, and make the assessment con-
form to the true value in money of the property contained in
said roll."

Now, under this section, what power has the State Board over
an individual assessment ? That is the main question submitted
to us for decision.

There can be no doubt that the County Board and the State
Board are alike boards of equalization ; the power of the former
being confined to the county, that of the latter extending to the
whole State, and it may be to each county. In my opinion, there
is as little doubt that the action of the State Board must suc-
ceed that of the County Board. The State Board can only act
on the assessment roll, or, perhaps, on some substitute for it, and
what appears therein. The assessment roll has a well-defined
meaning in this State. It appears as a roll in the first act on the
subject, passed March 30th, 1850. See §§ 20, 21, acts of 1850,
p. 137. It is a roll or book made up primarily by the assessors
of each county in the mode prescribed by law. The constitu-
ents of such a roll are set forth in the act of 1850. Provisions
of a similar character, in fact, most of them identical, appear in
every act on the subject since passed. The action of the County

Board of Equalization (which has been all along the Board of Supervisors) has succeeded that of the county assessor, as the action of the State Board must succeed that of the County Board. That the State Board acts subsequently to the action of the County Board, is proved by the fact, that it acts only after the assessment roll has been made and passed on by the County Board of Equalization, and equalizes the property over the whole State. The State Board makes no assessment roll, and if it can change an assessment, it cannot do so until the assessment roll comes under their consideration, except in the cases of railroads operated in more than one county, mentioned in § 10 of article xiii. And in these cases, the Legislature has enacted that there shall be made by the State Board an apportionment to each county, and a statement drawn up as to the part apportioned to each county, and transmitted to the county assessor, who is required to enter the statement on the assessment roll of his county; and this is in accordance with § 10. The State Board makes no assessment roll in this case; but makes a statement only, to be entered on the assessment roll of the proper county. It may be added, that this duty of the State Board is required by the statute to be done in each year on or before the first Monday in May.

The other duties of the State Board, so far as referred to in § 9, are exercised only on the assessment roll, or, it may be, some substitute for it. On these the State Board exercises its power of equalization, whatever that may be. How far does this power extend? The § 9 referred to states that it shall be their duty " to equalize the valuation of the taxable property of the several counties in the State for the purposes of taxation "; and it is further authorized and empowered, under such rules of notice as it may prescribe as to its action, " *to increase or lower the entire assessment roll,* or any assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property contained in said roll."

There can be no doubt that the State Board, in performing this duty of equalizing the assessment of the taxable property of the several counties in the State, may add to or deduct from the valuation of the property in the entire assessment roll in any

county in the State. This power is given by the language, "to increase or lower the entire assessment roll." They can also take each assessment roll and add to it or deduct from it, so as to make the assessment or valuation conform to the true value in money of the property contained in each roll. Some rolls may exceed the value of the property assessed in money, and others may be less than such value. Each one must be made to conform to the true value, either by lowering or raising, as the state of the roll may require. It may be remarked here, that, in making this valuation, it must conform to the *cash* value. That, in my opinion, is the meaning of the word " value." The value is to be ascertained as provided by law. (§ 1, art. xiii.) That is to say, the mode of ascertaining the value may be provided by law; but no power is here conferred to ascertain anything else than *cash* value, and the Legislature is not authorized to go beyond this, and fix any standard of valuation by providing a rule of valuation which departs from *cash value.* (Burroughs on Taxation, p. 227–229, and cases cited.)

What authority has this Board as to individual assessments contained in the roll? If it has any such power, it is outside of its power to equalize the property of the several counties, as between the counties. It pertains more to the power of assessment—to the function of the assessing officers, who in the first place fix the value. I cannot see why this power is not conferred on the State Board. The language is broad enough to give it. The same form of words is used in relation to this matter with regard to the County Boards and the State Board. If it is conferred in one case, it is in the other. It certainly may be conferred by the Legislature, for the Legislature is authorized to fix the mode and means for ascertaining the values of any property to be assessed, by §§ 1 and 13 of article xiii. They may employ the agency of individual assessors for each county, or one Board of Assessors or more in each county, or may confer this power on the State Board. All this is within the authority of the legislative power, as given by the sections referred to. (See *Houghton* v. *Austin*, 47 Cal. 662; *People* v. *Salomon*, 46 Ill. 333.) As was said by Marshall, C. J., in *McCullogh* v. *State of Maryland*, 4 Wheat. 411: "The Government, which has a right to do an act, and has imposed on

it the duty of performing that act, must, according to the dic-
tates of reason, be allowed to select the means." The means to
be employed is left entirely to the legislative judgment, subject
to no restrictions; but that the assessment must be made, except
in the case of railroads operated in more than one county, in
the county, city, city and county, town, township, or district in
which the property assessed is situated. (§ 10, art. xiii.) Nor
is such grant of power to a State Board without a parallel in
States where no constitutional inhibition exists. As in Missouri,
where such a power was conferred by statute on a State Board
in relation to railroads. (See *State* v. *Severance*, 55 Mo. 378;
Burroughs on Taxation, p. 236.) There is not only no consti-
tutional provision in the way here, but the language of the
Constitution confers it. (*Houghton* v. *Austin*, 47 Cal. 662.)

Certain rules of construction were referred to in the argu-
ment, and their application invoked. The rules referred to are
those relating to the office of a proviso, and the canon of a dis-
tributive construction, curtly expressed in the Latin words
"*reddendo singula singulis.*" These rules are very excellent
aids on the construction of statutes, when properly applicable,
but they are but aids to direct the inquiry to ascertain the in-
tention of the parties. (See remarks of Field, J., in *Ferris* v.
*Coover*, 10 Cal. 628.) This is the correct view as to all rules.
They are servants to guide in getting at the end and aim of all
construction, the intention of those who have used the language
to be construed, not masters to control. Some writer has com-
pared all such rules to the stars to which the mariner looks for
guidance on the ocean. But one must be certain they are stars
to guide, not false lights which mislead. (See Sedgwick on
Stat. and Const. Law, p. 192.)

In the case cited on the argument by one of the learned coun-
sel who spoke for the plaintiff (*Wayman* v. *Southard*, 10
Wheat. 1), the rule as to a proviso is thus stated by Marshall,
C. J.: "The proviso is generally intended to restrain the enact-
ing clause, and to except something which would otherwise
have been within it, or in some measure to *modify the enacting
clause.*" In *Voorhees* v. *Bank of the United States*, 10 Peters,
471, Baldwin, J., speaking of a proviso, says, "that in deeds and
laws it is a limitation or a grant made, or authority conferred;

the effect of which is to declare that the one shall not operate, or the other be exercised, unless in the case provided." Applying those rules, we see no difficulty in reaching the conclusion that the latter clause of § 9 is a *modification*, to some extent, of the duties prescribed in the foregoing part of the section; and that it is a direction, that, in the very cases spoken of in the proviso, the Boards are empowered to act on the whole assessment roll or any part of it, in order to accomplish the purposes declared, which are manifestly two: 1st, to equalize; 2nd, to fix and determine the true value of the property assessed. We see no ground to apply the rule *reddendo singula singulis.* The Constitution distributes the powers and duties, and we cannot re-distribute them. These things are done by the sovereign power, and in language clearly meaning what we have above indicated.

When we consider the circumstances under which these provisions were inserted in the Constitution, and the antecedent history in regard to a State Board of Equalization in this State, we should expect to find such powers conferred in the organic law. It is well known that there has been a conviction throughout the State for years, that property was not properly valued for purposes of taxation. As was said by Crockett, J., in *Savings and Loan Society* v. *Austin*, 46 Cal. 473: "It had become apparent in this, as in many States, that when the value of property for the purpose of taxation was to be ascertained and finally determined by the local assessors, subject only to a limited control by the County Boards of Supervisors, the grossest inequality frequently existed in the valuations in different counties, whereby the requirement of the Constitution that 'taxation shall be equal and uniform throughout the State' was practically abrogated." (See also remarks of Breeze, C. J., quoted by Crockett, J.

The state of things indicated in these remarks existed when the delegates to the Convention that framed the Constitution were elected, and when the Convention was in session; and it is not extraordinary that steps were taken to put an end to it by constitutional provisions. This was attempted by the provisions of the Constitution, in § 9, article xiii. The power to fix a valuation was given to the local assessor, to the Board of Super-

visors, and the State Board, to act in the order in which they are named. I can see nothing in these provisions but the natural outcome of the conviction above mentioned.

The restrictions on this power as to individual assessments, if there are any, must be looked for in the Constitution itself. The power to raise an individual assessment by the State Board is to raise the value of the property assessed, and partakes of the nature of an assessment. "An assessment is a valuation of the property to be taxed." "An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. As the word is more commonly employed, an assessment consists in the two processes of *listing* the persons, property, etc., to be taxed, and of *estimating* the sums which are to be the guide in an apportionment of the tax between them. When this listing and estimate are completed in such form as the law may have prescribed, nothing remains to be done, in order to determine the individual liability, but the mere arithmetical process of dividing the sum to be raised among the several subjects of taxation, in proportion to the amounts which they are respectively assessed. Sometimes the word 'assessment' is used as implying the completed tax list; that is to say, the list of persons or property to be taxed, with the estimates with which they are chargeable, and the tax duly apportioned and extended upon it; but the employment of the word is unusual, except in the cases in which the levy is apportioned by benefits; and in those cases the act of determining the amount of the benefits is of itself, under most statutes, a determination of the individual liability, and its entry upon the roll is an extension of the tax." (Cooley on Taxation, 253. See remarks of Wallace, C. J. in *S. & L. Society* v. *Austin,* 46 Cal. 415.)

If estimation of value is not the whole assessment, it is the most essential part of it, and it must be made in the county, city, etc., in which the property is situated. This is the express mandate of the Constitution, except as to the franchise, etc., of railroads operated in more than one county; such assessment may be made by the State Board in any county, or at Sacramento. (§ 19, art. xiii.) The exception is in the same sec-

tion with the general command; the excepted assessment is to be made by the State Board, and this collocation of the mandate with the exception, and the excepted assessment to be made by the State Board, strongly tends to show, that whenever the State Board exercises this power of assessment it must be in the county, etc., in all other cases than the one excepted. It should be remembered that any assessor or Board of Supervisors, in making this valuation, acts under the restrictions of law. Their power is not always unrestricted. A tax founded on an assessment, which from corrupt or malicious motives is made excessive, may be enjoined. (See Cooley on Taxation, 157, 547, and cases cited.)

In my opinion, when an assessment is to be raised by the State Board, it must be done in the county where the property is situated. The person with whose assessment the State Board is dealing is entitled to notice of time and place where such action is to be had. This was so held in *Patten* v. *Green*, 13 Cal. 329. Judge Cooley says it is a matter of constitutional right. (See Cooley on Taxation, 266–268, and cases cited in notes.) The § 9 under consideration recognizes the right to notice. As this notice is to be had of an act to be done in the county where the property is situated, and the Board must there act, the notice must be given to the party of its contemplated action at a meeting to be held in the county. This is practicable. If it is not, under the present legislation, an act may be passed, which will make it easy of accomplishment. If it cannot be done, a person cannot be deprived of a right secured to him by the Constitution. I cannot reach the conclusion, that it was intended that the State Board might demand the attendance of a person whose residence is in San Diego at the State capitol on such business, when he owned no property assessed in Sacramento county, with such a provision in the Constitution as that contained in the article referred to. No such oppressive procedure was ever contemplated.

I am further of opinion, that the State Board has no power to add any property to the roll, but their power is limited to the property on the roll, so far, at least, as the power to act on an individual assessment is concerned. Section 8, article xiii, directs the Legislature so to act as to have all the property to be taxed put on the roll.

As it appears from the petition that the property, the assessment of which the Board proposes to deal with, is situated in the city and county of San Francisco, which is admitted by the demurrer and not denied in the answer, I am of the opinion that the writ ought to issue.

McKee, J., dissented.

Sharpstein, J., dissenting:

I dissent.   The provisions of the Constitution which define the powers and duties of the State Board of Equalization are contained in § 9 of article xiii.   By reading all portions of that section which relate to the State Board together, I think the intention may be made reasonably clear.   It seems to me that they should be read as follows: "It shall be the duty of the State Board of Equalization to equalize the valuation of the taxable property of the several counties of the State for the purposes of taxation; and under such rules as it may prescribe for its action, to increase or lower the entire assessment roll, or any assessment contained therein, so as to equalize the assessment of the property contained in said assessment roll, and make the assessment conform to the true value in money of the property assessed."

The major part of this is taken from a proviso; but I am unable to perceive that it is repugnant to anything that precedes it. To "equalize the valuation of the taxable property of the *several* counties," is, as I understand it, to equalize it in each separate county, distinct from any other county.   If this view be the correct one, there is no inconsistency even between the clause of the proviso which confers upon the State Board the power to increase or lower any assessment contained in any roll, and the preceding clause, which, according to my interpretation of it, confers upon that Board the power to equalize the valuation of the taxable property of each separate and distinct county.   As I view it, there is no clause outside of the proviso which confers upon the State Board the power "to increase or lower the entire assessment roll" of any county. Without the aid of the proviso, it would be extremely difficult, I think, to ascertain what powers were intended to be given to

the State Board. The rule that a subsequent obscure clause shall not control a previous clear provision is not applicable to this case, in which it is the first provision alone that is obscure. No one doubts that these provisions should be construed according to the most obvious and natural import of the language used.

" Courts cannot correct what they may deem either excesses or omissions in legislation, nor relieve against the occasionally harsh operation of statutory provisions without the danger of doing vastly more mischief than good." Per Bronson, J., in *Waller* v. *Harris*, 20 Wend. 561.

I think that the application should be denied.