## JANUARY TERM, 1900.

[No. 4133.]

THE PEOPLE v. AMES, COUNTY ASSESSOR OF ARAPAHOE COUNTY.

1. TAXES AND TAXATION—STATE BOARD OF EQUALIZATION—STATUTES—REPEAL.

The act of 1899, Session Laws, 1899, page 158, in reference to the equalization of values of property for taxation amongst the several counties of the state by the state board of equalization, and providing that the board shall have power, as an incident to such equalization, to either increase or diminish the aggregate value of all the taxable property in the state not to exceed five per cent, repeals section 5 of the act of 1891, Session Laws, 1891, p. 294, which provides that in no instance shall the board reduce the aggregate valuation of all the counties below the aggregate valuation as returned by the assessors of the several counties.

2. TAXES AND TAXATION—STATE AND COUNTY BOARDS OF EQUALIZATION—POWERS OF EACH.

The state board of equalization has no power to revise the work of the county boards, or to equalize valuations between classes or kinds of property in the respective counties, but in equalizing and adjusting values amongst the counties, must deal with the respective valuations as returned by the county assessors, as entireties, and any change made in the county valuation must be made in the valuation as a whole.

3. SAME.

Where the state board of equalization went beyond its authority and attempted to equalize the valuations between classes and kinds of property of a county, the assessor properly refused to change his tax rolls as directed by the board to accord with the values fixed by the board.

*Original Application for Mandamus.*

IN 1891 the legislature, in prescribing the duties of the state board of equalization, provided: "Said board shall ascertain whether the valuation of real or personal property in each county bears a fair relation or proportion to the valuation in all other counties of the state of the same class or

kind of property, and on such examination, they may increase or diminish the valuation of any or either kind, class or grade of property in any county, as much as in their judgment may be necessary to produce a fair and just valuation between all the valuations of the same kind, class or grade of property in all the different counties of the state, but in no instance shall they reduce the aggregate valuation of all the counties below the aggregate valuation as returned by the assessors of the several counties." Laws, 1891, p. 294, sec. 5 ; 3 Mills' Ann. Stats. sec. 3846.

The late general assembly passed the following act:

" Sec. 1. The state board of equalization, at its annual September meeting, shall adjust and equalize the valuation of real and personal property among the several counties of the state in such a manner as to secure a just valuation for taxation of all property, real and personal, and shall have the power to either increase or decrease the aggregate valuation of all taxable property not to exceed in any year five per cent of such aggregate valuation, and only as an incident to such equalization.

" Sec. 2. All acts or parts of acts in conflict herewith are hereby repealed." Laws, 1899, p. 158.

The constitution of the state contains the following provisions : " There shall be a state board of equalization, consisting of the governor, state auditor, state treasurer, secretary of state and attorney general; also, in each county of this state a county board of equalization, consisting of the board of county commissioners of said county. The duty of the state board of equalization shall be to adjust and equalize the valuation of real and personal property among the several counties of the state. The duty of the county board of equalization shall be to adjust and equalize the valuation of real and personal property within their respective counties ; each board shall also perform such other duties as may be prescribed by law." Sec. 15, art. 10. The constitution also provides, section 3, article 10: " All taxes shall be uniform upon the same class of subjects, within the territorial limits of

the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

The state board of equalization, purporting to have adjusted and equalized valuations of property between the several counties which resulted in certain changes in the assessments, as returned by the respective county assessors, directed such officials to make the alterations in their respective assessment rolls necessary to conform to the action and direction of the board. . This order respondent refused to obey. To compel him to comply therewith, this proceeding was instituted, and an alternative writ of mandamus issued. From the writ and return, it appears that the board, in equalizing and adjusting property valuations between the several counties, has increased and diminished the valuations of certain kinds, classes and grades of property in Arapahoe county, varying in increase from two to fifty-four per cent, and in decrease from seven and a half to fourteen per cent.

Respondent justifies his refusal to comply with the order of the board, upon the ground that it had no authority to adjust and equalize the valuations of property in Arapahoe county in the manner it did. Counsel for petitioner contends that the action of the board is in all respects regular and legal, and even if not, respondent cannot question its action by refusing to make the required changes on the tax roll necessary to comply with its order.

Mr. DAVID M. CAMPBELL, attorney general, Mr. CALVIN E. REED and Mr. DAN B. CAREY, for petitioner.

Mr. CASS E. HERRINGTON and Mr. CHAS. G. CLEMENT, for respondent.

Mr. JAMES W. MCCREERY and Mr. FRANK J. ANNIS, *amici curiæ.*

· PER CURIAM. The decision of this case depends upon the determination of these propositions:

1. Does the act of 1899 repeal section 5 of the act of 1891?

2. Did the board of equalization regularly pursue its authority in equalizing and adjusting the valuations of property in Arapahoe county in the manner it did?

3. If not, can respondent raise that question in this proceeding?

1. The act of 1899 empowers the board as an incident to equalization, to increase or decrease the aggregate valuation of all taxable property in the state not to exceed five per cent, whereas, the act of 1891, expressly prohibits any change in this respect. The latter also provides that the board, in effecting an equalization of the aggregate value of the property in the counties of the state, may increase or diminish the valuation of any kind, class or grade of property in any county, as much as may be necessary to produce a just valuation between the valuations of the same kind, class or grade of property in the several counties. In this particular, the act of 1899 is entirely different, for it prescribes no rules which the board shall follow in equalizing and adjusting values of property between the several counties, save and except that it shall do so in such manner as to effect this result. Section 5 of the earlier and section 2 of the later act both refer to the same subject. The last covers the whole subject-matter of the first; does not purport to amend it; invests the board with new powers; plainly shows that it was intended as a substitute for the earlier section, and expressly provides that all parts of acts in conflict with it are repealed. For these reasons, we are of the opinion that section 2 of the act of 1899 operates as a repeal of section 5 of the act of 1891. *Tracy v. Tuffly*, 134 U. S. 206; *Wakefield v. Phelps*, 37 N. H. 295; *City of Sacramento v. Bird*, 15 Cal. 294; *Devine v. Board of Comrs.*, 84 Ill. 590; *Breitung v. Lindauer*, 37 Mich. 217; 23 Enc. Law, 495, and authorities cited in n. 4.

2. The constitution provides that taxes are to be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and are to be levied under a plan which shall secure a just valuation for the purposes of

taxation. One authority levies a tax for county purposes, the other for the maintenance of the state. To secure a uniformity in taxation, there must be a uniformity in valuation of the subjects upon which the tax is levied. To attain this end, boards of equalization have been provided, one object of which is to so equalize assessments as to bring the different assessments of the several parts of a taxing district to the same relative standard, so that no one part will be compelled to pay a disproportionate share of a tax. " The act of 1899 prescribes no method which the state board shall adopt in equalizing property values between the several counties. This is left to its discretion, but that does not authorize the adoption of a system which is illegal, for, as the statute fails to prescribe specific rules to be followed by the board, it must adopt such, which, if directed by the statute, would be lawful; so that the next question presented, is, did the board, as shown affirmatively by its own proceedings, legally equalize and adjust the values of property in Arapahoe county? This can be ascertained by determining its power and authority, in connection with that vested in the county board of equalization. Each is a constitutional body, with powers defined and limited by the fundamental law of the state, the respective authority of which is essentially different. The former shall equalize and adjust the property values *among* the several counties of the state; the latter shall equalize and adjust such values *within* the respective counties. The language employed with respect to the authority of each is different. That values should be equitably adjusted among the several counties of the state was necessary, because without a power lodged somewhere, to effect this result, great inequality might prevail in the valuation of the different counties, and the burden of supporting the state government would be inequitably distributed. For a like reason, it was necessary that property values be adjusted and equalized within the respective counties, so that the taxes for county purposes would be uniform. The state board has no authority to revise the work of the county board; therefore, it has no power to equalize

valuations between classes or kinds of property in the respective counties, for that is a matter which the constitution confides to the county board.   In order, then, that the two boards may work harmoniously, the action of one not interfere with the other, and the authority of each, within its own proper sphere be supreme, it must necessarily follow that the state board, in equalizing and adjusting values, must deal with the respective valuations as returned by the county assessors as entireties, by making such changes in each county valuation as a whole, as will relatively equalize the entire property values in the different counties, so that the burden of supporting the state government shall rest proportionately upon each.   In the case at bar the state board has not adjusted or equalized property valuations in Arapahoe county in the manner which the law contemplates, but in selecting different classes and kinds of property, and raising or lowering their values, has usurped the functions of the county board, and attempted to revise its action in this respect.   *People v. Lothrop,* 3 Colo. 428; *Wells, Fargo & Co. v. State Board,* 56 Cal. 194; *State v. Vaile,* 26 S. W. Rep. 672; *State v. Thomas,* 50 Pac. Rep. 615.

. In pursuing this method, it has clearly transcended its authority, undertaken to perform acts which it had no power to do, and having but special and limited jurisdiction, as a board of equalization, all acts outside of its authority are void. *State v. Vaile, supra.*

3. The state board cannot compel compliance with orders which it affirmatively appears from its own proceedings are without its jurisdiction and authority, by the law under which it assumed to act, and respondent properly refused to change the tax rolls, as directed by the board.   *People v. Lothrop,* 3 Colo. 428; *People v. Lawrence,* 6 Hill, 244; *Ex parte Clapper,* 3 Hill, 458.

The alternative writ is quashed and the proceedings dismissed at cost of petitioner.

*Writ quashed and action dismissed.*

ON PETITION FOR REHEARING.

PER CURIAM. In the brief filed in support of the petition for rehearing, counsel for petitioner state: "The method prescribed by the court as the only one which may constitutionally be adopted and followed by the state board, may be stated briefly as follows: The state board of equalization must find from the assessor's abstract of each county the aggregate value of all the property therein, as fixed by him, and equalized by the county board; then, by comparison of the values so fixed in that county, with the values fixed by the respective assessors and county boards of equalization in all other counties, the board must determine whether the aggregate value in that county is correct, or too low or too high, and if it is too low or too high, what per cent must be subtracted from, or added to, said aggregate, in order to make it what the comparison shows it should be."

This is a clear and concise statement of what we hold as the duty of the state board under the law as it now stands. It is contended that this construction of the constitution is detrimental to the interests of the state, and the taxpayers. In answer to this suggestion, we have only to say, that it is our duty to construe the constitution as we find it, and not to declare what it should be. It is the fundamental law of the state, which the people have adopted for the purpose of defining the powers and duties of the different departments of the state government, and the officials to which it refers; if its restrictions are found to be unwise or too great, the remedy is with the people to obviate the difficulties by an amendment, and not with the officials to disregard its provisions or to follow a course which, in their judgment, would accord with their ideas of what the provisions of the constitution on a given subject should be. In support of the reasons advanced why a rehearing should be granted, counsel illustrate their argument by numerous examples, from which we select the following:

"A county has assessed cattle at an average of $4.00 per head; the aggregate valuation of all the property within its

borders is fixed by its assessor and county board of equalization at $100,000. A comparison by the state board shows that the aggregate should be but $75,000. Under the above rule, all property valuation must be decreased twenty-five per cent, thereby bringing the average of cattle to $3.00 per head.

"B county has assessed cattle at $23.00 per head. Its aggregate valuation, as fixed by its assessor and county board of equalization, is also $100,000. A comparison shows that it should be $125,000. Under the same rule, all property must be increased twenty-five per cent, the cattle must be valued at $28.75 per head. The owner of cattle in B county pays approximately ten times as much state tax as the owner of cattle in A county."

The error in the argument sought to be deduced from the foregoing examples, is this: That it is assumed that because cattle are assessed in one county at $4.00 per head, and in another at $23.00 per head, that the county boards of each county have not adopted the same scale of valuation as to other kinds and classes of property in their respective counties, and that if they have not, the state board may revise their action. The question with which the state board deals is not whether certain kinds and classes of property in a given county have been assessed too high or too low, but whether the aggregate valuation of the property in that county as compared with the aggregate valuation of property in other counties is too high or too low; it has nothing to do with equalizing valuations between individuals, or between different kinds or classes of property in any county. That is a matter left with the county board. If it has not performed its duty in this respect, the state board cannot revise its action, but must presume that it has adjusted valuations within the county on a uniform scale. Exact uniformity in the scale adopted by the respective assessors and county boards in valuing property for the purposes of taxation, could not be expected, and it was, therefore, necessary for a state board to have the power to make this scale as nearly uniform as pos-

sible by dealing with the aggregate valuations of the respective counties in the manner indicated, and thus preserve uniformity of valuations in each county between the different kinds and classes of property which, so far as the state board is concerned, it must be assumed the county board has adopted in performing its lawful duties as a board of equalization. If the latter has been derelict in this respect, and by raising or lowering the aggregate valuation in any county, a class or kind of property is assessed too high or too low, that is a matter for which the county board is alone responsible.

*Petition for rehearing denied.*