ELMER S. DUNDY, APPELLANT, V. THE BOARD OF COUNTY COMMISSIONERS OF RICHARDSON COUNTY, APPELLEE.

1. **Taxation:** RAISING ASSESSMENT. When the assessment in one district is relatively higher or lower than that of another, the county commissioners, sitting as a board of equalization, may add to or take from the entire assessment of any particular district without notice to the individual tax payers. *South Platte Land Co. v. Buffalo County*, 7 Neb., 253, distinguished. But they cannot do so without evidence and by a mere arbitrary exercise of power. [COBB, J., dissenting.]

2. ———: ASSESSING IMPROVEMENTS. The statute requires the value of improvements upon land to be added to the value of the land in making the assessment, and not assessed separately; but where it is clear, either from the record or extrinsic evidence, that such separate assessment of improvements was intended as a separate item of the value of the real estate, a tax assessed thereon will be a valid lien upon the real estate.

3. ———: LAND ROAD TAX. The land road tax of four dollars per quarter section was repealed by the constitution of 1875.

4. **Constitutional Law:** SPECIAL LEGISLATION: BONDS. The act approved February 14, 1873, "to authorize Falls City precinct to issue bonds to aid in the construction of a court house for Richardson county" is in conflict with section one, Art. VIII, of the constitution of 1867, and bonds issued thereunder are void.

5. **Bonds:** AUTHORITY OF COUNTIES AND PRECINCTS. Counties and precincts have no authority to issue bonds unless authorized to do so by express statute.

6. **Taxation:** ASSESSMENT OF LAND NOT CONTIGUOUS. Tracts
of land not contiguous should be assessed separately, and a
failure to do so would render a tax deed based thereon invalid;
but where a party seeks to enjoin the collection of a tax upon
that ground, he must set forth such facts in his petition as
show the collection of the tax to be unjust and inequitable.

THIS was an appeal by plaintiff from a decree rendered in the district court for Richardson county, WEAVER, J., presiding. The cause was tried upon the pleadings and an agreed statement of facts, and having been heard here on the last day of the present term, was by stipulation of the parties submitted to the court, and the decision thereon filed and decree entered in vacation, April 22, 1879.

The agreed statement of facts is as follows:

It is hereby stipulated and agreed by and between the parties hereto, that this cause shall be fully submitted to and decided by the court on the pleadings filed herein, and the following statement of facts, admitted to be true, either party reserving the right to appeal to the supreme court for the purpose of reviewing or correcting such decree as may be rendered by the district court.

It is admitted that said plaintiff was at the time of bringing this suit, and for four years previous thereto, and yet is, the owner in fee of all the land described in plaintiff's bill, except the undivided fourth part of the piece described as lot six, and at the time the suit was brought, and taxes were levied, the said undivided fourth part of said lot belonged to J. E. Burbank, and that the assessor who assessed the same valued and assessed the lands at the sums stated in the bill for the years 1876 and 1877, and that the quantity of the land is correctly stated. That the said lands are described by their well known and recognized legal subdivis-

ions, and have been so recognized in and by the assessments for several years last past.

That for the year 1877 the assessor made an assessment against the plaintiff's land, described as a part of section No. eleven, town one, range No. sixteen, as shown in said bill, a copy of which is hereto attached, showing the present condition of said assessment as appears by the assessment roll.

That the county commissioners, as a board of equalization, met on the sixteenth of April, 1877, and on the twenty-seventh day of the same month the said board of equalization added to the assessed value of all of said lands the further sum of twenty-two per cent, and added that amount to the taxable value of said lands, as stated in plaintiff's bill, and that the plaintiff had no notice whatever of any such intention on the part of said board until after such assessment was raised.  That the said order, so made by said board, remains matter of record and unrevoked.

That the said lands were assessed for the year 1876, at the prices and sums stated in the bill, and that on the seventeenth of April, 1876, the commissioners met as a board of equalization, and on the twenty-first day of the same month the said board made an order directing eighteen per cent to be added to the said assessment, which was done, which is matter of record, and remains unreversed and unrevoked, and the taxes were levied on all of said land, including the eighteen per cent so added as aforesaid as stated in said bill, no notice of which was given to plaintiff, nor of any intention so to do.

That on the —— day of July, 1876, the county commissioners levied taxes on said lands, including the raised assessments, at the rate stated in the bill, and that the taxes were made out and placed in the hands of the treasurer for collection, and that the treasurer

has been seeking to collect the same as stated in the bill.

That the taxes levied on said land for the year 1876 are correct as stated in the bill.

That the plat hereto attached, showing location and description of land described in the bill, is correct.

That the assessments complained of have in no respect been corrected, and the taxes levied thereon will be enforced unless the treasurer of said county shall be restrained from proceeding therefor.

That the assessor for 1877 assessed the improvements on land of said plaintiff in section No. eleven, and on the other improved lands in said precinct, a part of which is shown by the copy of one page of the assessment roll hereto attached, and that after the said roll was returned into the clerk's office, and there filed, the said commissioners erased from the roll all the assessments on such improvements, except in the three instances stated in the bill, and that no change has since been made thereon.

That lots two and five, in section twenty-three, town one, are not contiguous, but are assessed together.

That lots five and six, section twenty-two, were assessed and taxed together, for the year 1876, and for the sum named as stated in the bill.

That lots two and five, section twenty-three, are not contiguous, but are assessed and taxed together for the amount, and as stated in the bill.

*Isham Reavis* (*John L. Webster* with him) for appellant, cited *South Platte Land Co. v. Buffalo County*, 7 Neb., 253. *Hamlin v. Meadville*, 6 Neb., 235.

*Frank Martin*, for appellee.

1. We may safely admit that where the board proceeds as a board of revisory assessors to change indi-

vidual valuations, they should give the individual some notice, in order that he may be present and protect his interests. We think our statute gives the board— *First.* The general powers of ordinary boards of equalization, viz.: The power to equalize the whole assessment of the county by raising or lowering different political or general geographical portions or subdivisions of the county so as to make them as near equal as may be. And, *Second.* In addition to such ordinary and general powers it gives the board other special powers in regard to individual cases. We contend that the two powers are distinct and independent, and governed by entirely different rules. The board, in the two cases reported, were acting under their special powers, but in this case were acting under their general powers, and sought to do what the law authorized them to do, viz.: increase the valuation a certain per cent on one portion of the county, and decrease a certain per cent on another. For that general purpose the statute is notice to all the world of the time and place of the meeting of the board, and all persons are bound to take notice of it. *Nixon v. Ruple,* 30 N. J. Law, 60. *Hambleton v. Dempsey & Co.,* 20 Ohio, 168. *Kelley v. Carson & Richardson,* 8 Wis., 182.

2. In regard to the court house bond tax, we say the complainant is estopped from questioning the validity of the law under which they were issued. *Ferguson, etc., v. Landrom, etc.,* 5 Bush, Ky., 241. Cooley on Taxation, 573, and cases there cited.

MAXWELL, CH. J.

On the second day of July, 1877, the plaintiff filed a petition in the district court of Richardson county, alleging that he is the owner in fee of 60 acres in the south-east quarter of section eleven, town one, and

range sixteen, which in the year 1877 was assessed at the sum of $900. That he is also the owner of the undivided three-fourths of lot six, in section twenty-two, town one, and range sixteen, containing about 30 acres, which in that year was assessed at $180; that he is also the owner of lot five, in section twenty-two, town one, range sixteen, containing 32.42 acres which was assessed at the sum of $280. That he is also the owner of lot two, section twenty-three, town one, range sixteen. That he is also the owner of lot five, section twenty-three, town one, range sixteen, containing 25 acres, lots two and five being assessed together at the sum of $444. That he is also the owner of lot one, in section twenty-four, town one, range sixteen, containing about 31 acres, assessed at the sum of $186. That he is also the owner of the north half of the north-east quarter of section thirty-two, in town one, range sixteen, containing 80 acres, assessed at $452. That all of the above described lands, except the first, are legal subdivisions as made by the government surveys.

The petition also alléges "that after the assessment of said lands had been made by the assessor of said precinct for the year 1877, the assessment roll was duly returned to the county clerk's office of said county, where the same now remains as a part of the records of said county; that the assessor of the said precinct, or the board of county commissioners, or one of them, or some other person by their direction * * undertook to value and assess the improvements on the lands first above described, and assessed the same separately, and detached from the land, at the sum of $1500, which now stands upon the assessment roll against the plaintiff."

The petition also alleges that afterwards the county commissioners caused the assessment for improvements to be stricken from the assessment roll, excepting upon

35

the plaintiff's land and lands owned by Charles Steele and one Shack, and that no other assessments of improvements were made upon any lands in the county, although there were many and valuable improvements on the cultivated lands throughout all portions of the county.

The petition also alleges that on the sixteenth day of April, 1877, the county commissioners of said county met as a board of equalization and continued their sessions until the twenty-seventh of that month, when they "unlawfully and wrongfully added 22 per cent, and ordered 22 per cent to be added to the assessment and ascertained valuation of the land before described, and also on all the real estate outside of 'city property' in said Falls City precinct; that the said assessment so made and returned by the assessor was raised and increased by the said commissioners at the rate of 22 per cent in violation of law, without their having *any sort* of lawful evidence before them on which to base their action, and totally irrespective of the assessment so made or the real cash value or market value of the land in said precinct."

It is admitted in the agreed statement of facts that this increase was made without notice. Substantially the same facts are alleged as to the assessment of the lands in question for the year 1876. The board of equalization increasing the assessment in that year 18 per cent.

For the year 1876 the following taxes were levied on said lands:

State general tax......................................4 mills.
"    sinking  "  .........................................1    "
"    school   "  .........................................1    "
"    university tax.....................................$\frac{1}{4}$    "
"    penitentiary tax.................................1    "
"    bond tax...........................................$1\frac{1}{10}$    "

Dundy v. Richardson County.

COUNTY TAX:

Insane tax..................................................½ mills

County general tax......................................6 "

County sinking " ....................................½ "

County bridge tax............................................5 "

Railroad tax..................................................5 "

Land road tax, $4 per quarter section.

Court house precinct tax...........................3½ mills.

Falls City precinct special tax.....................1₇ "

It is alleged that these taxes were levied upon the lands heretofore described by the county commissioners in the year 1876, and are a cloud upon the title of plaintiff to the same, and that the treasurer of the county is about to proceed to collect said taxes. The petition also alleges that the county commissioners of said county, unless restrained, will levy said illegal taxes upon said lands for the year 1877, etc.

The plaintiff states that "he is ready and willing at all times to pay the lawful taxes on said land," etc. The plaintiff prays for an injunction to restrain the commissioners from levying a tax on the improvements heretofore mentioned, and from levying a tax on the 22 per cent valuation added in 1877; also restraining the collection of the land road tax of $4 per quarter section, the court house tax, the insane tax, and the special railroad tax, and also to restrain the collection of the tax on lots five and six, in section twenty-two, and two and five, in section twenty-three, and for general relief. The defendants filed an answer to the petition, which it is unnecessary to notice, as they afterwards, by their attorney, signed an agreed statement of facts admitting the material allegations of the petition to be true.

On the trial of the case the court found that "the proceedings of the county commissioners at their sessions in April, 1876 and 1877 respectively, acting as a

board of equalization of said Richardson county, * * in raising the assessments on the lands of said plaintiff * * * acted without notice to the plaintiff and consequently without jurisdiction of the plaintiff or the subject matter." The court also found that the land road tax, the precinct railroad tax, and the county insane tax were levied without authority of law and are void. The court also found that the assessments on lots five and six, in section twenty-two, town one, range sixteen, are void, and the injunction made perpetual as to these taxes, and as to all other taxes in the petition the bill was dismissed. The plaintiff appeals to this court.

In the case of the *South Platte Land Co. v. Buffalo county*, 7 Neb., 253, this court held that a court of equity will enjoin the collection of an erroneous or illegal tax when the enforcement of the assessment would lead to a multiplicity of suits, or produce irreparable injury, or cast a cloud on title to real estate, or when the assessment on the face of the proceedings is valid, and requires extrinsic evidence to show its invalidity, or when officers transcend their authority. In that case, it was held that county commissioners, acting as a board of equalization, cannot raise the assessment of property without giving notice to the owner, and if they do so increase the assessment of property without notice, they act without jurisdiction of the person or subject matter, and their proceedings are void. That was a case where the board of equalization without notice raised the assessment of the property of an individual, without increasing in like proportion the assessment of contiguous lands. That such an act is void there can be no question, as no such absolute power has been given to the board. The rule, however, is different where it is clearly made to appear to the board that the assessment in one district is relatively higher

or lower than that of another. In such cases they may hear testimony upon the question of relative values and add to or take from the entire assessment of any particular district, but they cannot do this, as in the case at bar, "without their having any sort of lawful evidence before them on which to base their action." They cannot, by. a mere arbitrary exercise of power, without cause add to the assessed valuation of a particular district. The decree of the court below as to the amount added to the assessments of the plaintiff by the board of equalization, is therefore affirmed.

As to the tax on improvements, section twenty-four of the revenue law [Gen. Stat. p. 904], provides that: " On or before the second Monday in April, annually, the several precinct assessors shall make out and deliver to the county clerk an assessment roll consisting of the following items, to-wit:

"*First.* A list of all the taxable lands in such precinct in numerical order, beginning with the lowest numbered section, in the lowest numbered township, in the lowest numbered range in the precinct, and ending with the highest numbered section, township, and range, with the number of acres in each tract set opposite the same, in a column provided for that purpose, and the assessed value thereof in another column, and the name of the owner or person listing the same in another column, with the column of acres and values footed up. Such list to be as near as practicable in the following form:

"Return of taxable lands in .............. precinct, in .............. county, Nebraska, as assessed for the year 18......

| Part of Sec. | Section. | Twp. | Range. | Acres. | Value. | Ownr's Name" |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

It is clear from this, that the improvements upon land must be added to the value thereof, and the whole assessed as real estate. Where, however, it is apparent, either from the record or extrinsic evidence, that the improvements, although assessed separately, were in fact an assessment upon the real estate as a separate item, the tax will be valid and binding and a lien upon the real estate. But in this case, so far as appears, the tax was entirely unauthorized and a mere arbitrary exercise of power on the part of the taxing officers. The decree dismissing the petition as to this tax is therefore reversed.

The land road tax was repealed by the constitution of 1875 and the levy of the same was therefore void. The decree enjoining the collection of the same is therefore affirmed.

The tax described as the "insane tax" was levied without authority of law and is void. The decree as to that is therefore affirmed.

The court house tax was levied for the payment of bonds issued under a special act of the legislature, approved February 14, 1873, "to authorize Falls City precinct to issue bonds to aid in the construction of a court house for Richardson county." Special Laws, for 1873, p. 80. Have such bonds any validity under our constitution? Section 1, Art. VIII of the constitution of 1867, prohibited the legislature from passing any special act conferring corporate powers. This being the case, the act in question conferred no authority whatever to issue the bonds in question, and they are absolutely void in whosesoever hands they may be. *Clegg v. School District, ante* p. 178.

Counties and their subdivisions are mere governing agencies charged with certain objects of necessary local administration. They have no authority to issue bonds unless it is conferred by law, and the purchaser of such

bonds must look to it to see that the municipality is-
suing the same had authority to do so. The mere recital
of such authority in the bonds, if it did not actually
exist, adds nothing to their validity. And this applies
to the precinct bonds which were issued without sub-
mitting the question to the people and without author-
ity. The court therefore erred in dismissing the ac-
tion as to these bonds. The judgment of the district
court is therefore reversed as to the tax levied for
these bonds and the injunction as to said tax made per-
petual.

It appears that lots five and six in section twenty-
two, and lots two and five in section twenty-three,
town one, range sixteen, were assessed together, and it
is insisted that in consequence thereof the tax levied
against the same is void. Under our statute, where
lands belonging to the same person are contiguous, it
is not necessary to list them in the smallest govern-
mental subdivisions. Section six of revenue law [Gen.
Stat., 898] provides that "the list of each person shall
contain, *first*, his lands by township, range, and sec-
tion, and any division or part of a section lying in the
county in which the list is required," etc.

Where lands belonging to the same person are con-
tiguous they may be listed in such governmental sub-
divisions as may be convenient, unless the difference
in value of the smaller subdivisions requires a separate
assessment. But where the tracts are not contiguous
they should be assessed separately, and a failure to do
so would render a tax deed based thereon invalid, be-
cause it is a title derived from a naked power to sell
land, and the conditions, upon which the power to sell
may be exercised, must be substantially complied with.
But when a party seeks to enjoin the collection of a
tax upon real estate, he must set forth such facts in his
petition as will show the collection of the tax to be

unjust and inequitable.    Nothing of the kind is alleged or proved, nor is it claimed that the aggregate assessments are too large.    The lands assessed together being in the same sections, and apparently wild lands, it is reasonable to infer that they are about of equal value per acre, and that the plaintiff is not injured by the assessment.    The judgment of the court below declaring the assessment void is therefore reversed.

A decree will be entered in this court in conformity with this opinion, the plaintiff to have the relief herein granted upon the payment of the amount of taxes justly due upon said real estate.

DECREE ACCORDINGLY.

COBB, J., dissented from that portion of the opinion covered by the latter clause of the first point in the syllabus, stating that in his view of the matter the commissioners could raise and lower the valuation of entire precincts, as might be necessary for a proper equalization, without notice to any parties or hearing evidence upon the question of relative values, but according to their own judgment.