ROBERT KITTLE AND OTHERS, PLAINTIFFS, v. JOHN E. SHERVIN, TREASURER OF DODGE COUNTY, DEFENDANT.

1. **Taxes:** SALE OF REAL ESTATE. Since the taking effect of the act of 1877 [Laws, p. 43], a county treasurer has authority to sell real estate without first exhausting the personal property of the tax payer.

2. ———: ———: PRIVATE SALE. Under the revenue law in force December, 1877, where real estate had been advertised, and not sold for want of bidders, the county treasurer could sell the same at private sale, and was not required to give notice of or invite competition at such private sale.

3. ———: CERTIFICATE OF SALE. Section 54, General Statutes, 917, being repealed by Laws 1877, page 48, and not being in force at the time of the tax sale for the year 1876, the county treasurer, in selling real estate for delinquent taxes, could, by virtue of the law of 1871 [General Statutes, 517], make a separate sale of real estate for delinquent city taxes of cities of the second class, issue a separate certificate therefor, and be entitled to receive the same fee as upon sales for delinquent state and county taxes.

4. ———: INTEREST ON DELINQUENT TAXES: CONSTITUTIONAL LAW. Provisions of law allowing the holders of certificates of tax sale forty per cent per annum upon the redemption of lands from such sale, are not in violation of section 15, Article III of the constitution, which provides that "the legislature shall not

7

pass local or special laws   *   *   regulating the interest on money."

5. ———: BOARD OF EQUALIZATION. One who does not appear before the board of equalization cannot afterwards by original action defeat the levy of taxes, and a sale of his property thereunder on the ground that a large amount of other property escaped taxation by an under assessment, thereby increasing the rate on his property.

6. ———: CITY TAXES. A city council sitting as a board of equalization have no authority to raise the assessed value of all the property of said city by raising the aggregate value of each assessment a certain per cent.

7. ———: ———. A tax levied upon all real estate of a city and not upon personal property, for the purpose of making local improvements, is unconstitutional and void.

ORIGINAL application for an injunction to restrain defendant from issuing a tax deed upon certain property owned by plaintiffs, in pursuance of a sale for taxes thereon, plaintiffs contending that the same were void.

*R. Kittle*, for plaintiffs.

*Marlow & Munger*, for defendant.

COBB, J.

In considering the several points arising in this case, I will endeavor to follow the order as I find them in the agreed state of facts submitted by the plaintiffs and defendant, omitting, however, No. 1, as that does not present a controverted point.

2.   That plaintiffs had, on the first of January, 1876, and up to the present time, owned and occupied the premises the taxation of which constitutes the subject matter of this suit, and have owned and kept thereon publicly "sufficient personal property to more than three times in value of the said taxes of any one year thereon accruing," etc.

The point is here presented that the said county treasurer could not lawfully sell the real estate of the plaintiffs for delinquent taxes as long as they had and possessed personal chattels on the said land sufficient to pay the said taxes.

The law as contained in the General Statutes, secs. 49 and 50, 916, made it the duty of the county treasurer to proceed, as soon after the first day of May of each year as practicable, to collect all delinquent taxes by the seizure and sale of the personal property of the delinquent tax payers, if any such personal property could be found, and such provision was made to apply "as well to the taxes assessed on real estate and remaining unpaid as to delinquent taxes assessed on personal property." And while said sections remained in force, this court has repeatedly held that a sale by the county treasurer of lands for delinquent taxes assessed thereon, without first making an effort to find personal property out of which to make the taxes, where such delinquent tax payer was the owner of sufficient personal property in the county out of which such taxes could be made, was void. But sections 49 and 50 were repealed by the act of February 15, 1877 [Laws, p. 43], which took effect June 1, 1877, four months before the sale complained of, so that the authority and certainly the reason of the Nebraska cases fail to sustain the position of the plaintiffs on this point.

3. After setting out the several funds into which both the county and city taxes were distributed as assessed upon the said block for the year 1876, the stipulation proceeds to the fourth point, as follows:

"4th. That on the fifth day of December, 1877, the said taxes so levied and assessed remained unpaid * * * The said real estate having been by said treasurer previously advertised for sale for both

the taxes levied by said county commissioners and by said city council, and not sold for want of bidders, said county treasurer did, on said fifth day of December, 1877, sell said real estate to J. T. Smith at private sale and without notice to these plaintiffs or opportunity for competition in bidding, except by advertising to sell on a previous and other day than said fifth day of December, as before stated, for said tax of 1876, to-wit: $63.70, together with the additional sum of $4.55, as interest on the same, and the sum of twenty cents costs of advertising for sale.   Total $68.45."  "And the said treasurer charged the said J. T. Smith, as fees for making said sale, $3.40, the five per cent provided by statute in case of actual sales, and the sum of fifty cents for a sale certificate."  "And afterwards and on the same day said county treasurer again sold said premises to said J. T. Smith for said city taxes, to-wit: $25.85 together with the additional sum of $1.85, as interest on the same, and twenty cents costs of advertising for sale.   Total $27.90."  "And said treasurer charged said J. T. Smith, as fees for making said sale, $1.39, the five per cent fee provided by statute in case of actual sales, and the sum of fifty cents for a sale certificate, making $102.16 paid to said treasurer by said J. T. Smith, for which said treasurer, the defendant, claims payment from plaintiffs, together with forty per cent interest thereon from the said fifth day of December, 1877, or in case of failure or refusal of plaintiff to pay said sum and said interest thereon, then in such case defendant, said treasurer, threatens to deed said premises to pay said sum and interest."

The points sought to be established by this clause of the stipulation are, 1st, that the said sale is void for the want of notice and an opportunity for competition at the said sale.   The statute in force at the time providing for the sale of lands for delinquent taxes required

the county treasurer to give notice of the sale by pub-
lication thereof once a week for three consecutive
weeks, commencing the first week in August preced-
ing the sale, in a newspaper of his county, if there be
one, and if there be no paper published in his county,
shall give notice by a written or printed notice posted
on the door of the court house     *     *     *      and the
same statute also provides that, "after the tax sales
shall have closed, and after the treasurer has made his
return thereof to the county clerk   *   *   *   if any
real estate remain unsold for the want of bidders
therefor, the county treasurer is authorized to sell the
same at private sale, at his office, to any person who
will pay the amount of taxes, penalty and costs thereof
for the same" etc., *Gen. Stat.*, 917, 921.

The advertising and offering of such lands at public
sale is a condition precedent to their sale at private
sale.     But it is expressly stated in the said stipulation
that the said real estate had been previously advertised
for sale for the said taxes, and not sold for the want of
bidders.     The very terms "private sale" exclude all
idea of publication of notice therefor, and competition
in bidding thereat.     And 2d, that the said J. T. Smith,
the purchaser of said lands, was charged by the said
county treasurer for two certificates of sale instead of
one.

Section 54 of the revenue law, as found on page 917
of the General Statutes, provided that "whenever in
the collection of any district, town, city, or local tax,
which may have been levied according to law, the col-
lector is not able to make the tax by distress and sale
of personal property, and real estate is to be sold for
the same, it shall be the duty of the collector of the
tax to send such delinquent list to the county treasurer
on or before the 15th day of July of each year, and the
county treasurer shall receive the delinquent list, and

advertise the same at the same time he advertises the sale of real estate for delinquent taxes as hereinafter provided, by adding the amount of such delinquent district, town, city, or local tax to the amount of the delinquent state, county and other taxes, and shall sell such lands for the purpose of paying all such delinquent taxes as hereinafter directed, and shall credit the proper district, town, city, or locality for the amount of taxes so collected," etc. But sec. 54 was repealed by the act of February 19, 1877—see pages 44–48, laws of 1877—and was not in force at the time of any of the proceedings complained of. Under its provisions it seems quite clear that but one certificate should have been issued and charged for by the county treasurer; but said section being repealed, the county treasurer was, for his authority to sell said property, for delinquent city taxes at all, relegated to section 2 of the act entitled " An act to provide the manner of collecting city taxes in cities of the second class, and to define the duty of certain city officers," approved June 6th, 1871, and to be found on page 157 of the General Statutes. Under the provisions of the latter section there can be no doubt of the power of the county treasurer to make a separate sale of property for delinquent city taxes, and to make a separate certificate of such sale, and I think that it necessarily follows that he would be entitled to charge and receive the same fee therefor, as upon sales for delinquent county taxes. But suppose I am wrong in this conclusion. It is neither claimed or admitted in the said stipulation that the said treasurer sold the said real estate for said delinquent taxes including the said certificate fee of fifty cents. But the complaint on this point is that the said county treasurer charged and received from the said J. T. Smith the said sum for the said certificate.

The fourth and fifth paragraphs of the stipulation

Kittle v. Shervin.

relate to the payment, by the said J. T. Smith, of the delinquent taxes on the said real estate for the years 1877 and 1878, upon which no point seems to be made. Paragraphs 6 and 7, which will be considered together, are as follows:

" 6.   That said plaintiffs being unable to pay said taxes before the fifth day of September, 1879, for causes beyond their control, did on that day offer to pay to said treasurer the said sum of $102.16, with interest thereon from the fifth day of December, 1877, at the rate of 12 per cent per annum, on condition that the said sale of said block 2 be cancelled and declared by said treasurer void, and the taxes on said premises for the year 1876 to be receipted paid by plaintiffs, and so marked on the tax book of that year, which offer was then and there rejected by said treasurer," etc.

" 7. · That said treasurer then and there demanded the said sum of $102.16, and the said several sums which appear as aforesaid to have been paid by the said J. T. Smith, together with 40 per cent per annum interest thereon from said dates of payment, as the only condition on which said treasurer would allow said plaintiffs to redeem said premises from the said sale, and the return of said certificates and the cancellation thereof."

Upon these clauses of the stipulation the plaintiff would seem to seek to raise the point that the said J. T. Smith, having bought in the said real estate for the delinquent taxes of 1876, and the same remaining unredeemed, and becoming again delinquent for the taxes of 1877 and 1878 respectively, and the taxes thereon for said last two years being paid by the said J. T. Smith, under the provisions of section 61 of the revenue act (Gen. Stat. 921), that the owners of the said real estate could redeem the same from the said

sale without paying the said subsequent taxes.   But if such was their intention, they have not followed it up in their brief, and I can scarcely see how they could successfully, under the provisions either of sec. 64 of the old revenue law (Gen. Stat., 922), or sec. 119 of the act of 1879, Laws of 1879, 324.

But the principal question sought to be presented in these paragraphs is that of interest.   Plaintiffs claim that the provision of the old revenue law, allowing the holders of certificates 40 per cent, and of the new allowing them 20 per cent interest upon the redemption of the lands, are repugnant to the provisions of the 16th clause of section 15 of article III of the constitution.

The words "the interest on money" as used in the article referred to, are equivalent to the words "interest for the loan or forbearance of money," and refer exclusively to the question of lawful interest between borrower and lender, debtor and creditor, as distinguished from usury.   The exacting of interest from a delinquent tax payer is not the enforcement of a right based upon contract, but is the exercise of a branch of governmental sovereignty similar to that of eminent domain.   The constitution contains several sections limiting the taxing power and defining the right of redemption from tax sales, all of which are plain and direct, and when it is borne in mind that neither our former constitution (or, as I believe, that of any one of our sister states) had placed any limitation upon the legislative discretion as to the rate of interest on tax sales, it is unfair to suppose that, had the framers of the instrument under consideration sought to ingraft upon it so radical a principle as that contended for, that they would have used a form and language of such doubtful construction, and more especially is this the case when it is also remembered that it is an universal canon of construction that acts of limitation,

however sweeping their terms, are never held to include the state, unless it be specially named. The imposition of a high rate of interest on tax sales has for its primary object, the prompt payment of the revenues of the government, and for this purpose it is sought to operate on the tax payer and induce him to pay his taxes and thus avoid the payment of heavy interest; failing in this, to offer to other parties a field for the investment of money at a higher rate of interest than that paid by borrowers, so that in no event shall the state and its municipal agencies be deprived of the revenues necessary for their support. But if every owner of property, instead of paying the taxes thereon, can make himself the debtor of the state therefor, and let it run for an indefinite length of time at the same rate of interest, or even less than that at which money can be borrowed on the best of security, it needs but little experience in the business of life to see that the prompt payment of taxes could not be relied upon.

So that, as I cannot conceive that it was the intention of the framers of the constitution to withhold from the legislature the power to provide for the support of the state government, I cannot believe that they employed the language relied upon for the purpose of restricting the rate of interest on tax certificates to twelve per cent or to seven per cent as would be the logical result of the position urged by the plaintiffs.

"8. That the tax lists furnished to the tax payers of said city and precinct by the assessors for said several years 1876, 1877, and 1878, to make return of their property thereon, were so arranged and worded that said tax payers were led to believe and did believe that it was their lawful right to return their moneys and credits less their liabilities, and to return the capital employed in business as the amount of their personal

property so employed less their liabilities, instead of the actual personal property owned by and employed in their possession on the first day of March in said years. And said tax payers so made the return of their said property, and it was so assessed by said several assessors, and so valued less said liabilities, and taxed less the same for said several years, and not taxed as real property was taxed, without deduction for said liabilities of the owners thereof. And by reason of such exemption of personal property plaintiffs' taxation was 15 per cent greater on his said real estate."

Undoubtedly we have thus presented in the stipulation a great evil which exists in all parts of the state, and by means of which many traders and other owners of personal property in a great measure escape taxation to the extent of greatly injuring the owners of real estate by the unjust increase of their taxes. But unfortunately neither the allegations of the plaintiffs' petition nor the facts as agreed upon in and by the stipulation, are such as to entitle the plaintiffs to relief in this respect.

Sections 5 and 6 of the revenue law then in force, Gen. Stat., 898, provided for the furnishing by the county commissioners of each county, on or before the first Monday of February of each year, to the precinct assessor suitable notices and blank forms for the assessment, and such instructions as may be needful to secure full and uniform assessments and returns.

The latter section also provides what the said lists to be filled out by each property owner shall contain, etc.

All of this is matter of public law, of which all persons of sound mind and who have arrived at years of discretion are charged with knowledge. And even were we informed by the pleadings or stipulation, which we are not, in what respects the lists furnished

to the tax payers of Fremont city and precinct failed to come up to the requirements of law, I cannot conceive how they could have been "so arranged and worded" as to lead the tax payer to construe the law as stated. But the probability is that any misunderstanding that may have existed on the part of the property owners was a wilful one on their part.

If such an assessment as that described in the petition and stipulation was made, then it was the privilege, if not the duty, of the plaintiffs and all persons similarly situated to appear before the board of equalization and have the same rectified. Section 27 of the revenue law then in force, Gen. Stat., 907, gave the board of equalization ample power, and made it their duty, upon complaint being made to it, to remedy all errors in the assessments. See *S. C. & P. R. R. v. Washington Co.*, 3 Neb., 40. The time of the annual meeting of said board was fixed by law, at which time it was their duty to decide all questions concerning the assessments, without adjournment, and their decisions were endowed with the quality of judicial decisions, reviewable only on error in the higher courts. Now the question is presented whether a tax payer can ignore the existence of such tribunal created for his protection, and, after the lapse of many years, for the first time bring his case to this court and claim that an act of an assessor, clearly remediable before such board but never presented, had rendered nugatory the scheme of taxation of an entire county. And this not only for one year but for three years in succession. It seems to me that the mere statement of this proposition is sufficient to demonstrate that such claim cannot be allowed.

The plaintiffs rely upon the case of *Weeks v. The Supervisors of Milwaukee Co. et al.*, 10 Wis., 240. As I understand that case, the distinction there made, as well as in the other Wisconsin cases touching upon

this question, is that where taxable property in a city is knowingly and with a design to benefit the city by increasing its population and business exempted from taxation by the common council or other legislative authority of the city, the taxes levied on other property of the city being thereby necessarily increased, are illegal and uncollectible—otherwise when property is left off of the assessment roll by mere non-action or as the result of ignorance or stupidity.

No. 10 of the agreed state of facts is devoted to the taxes levied under the authority of Dodge county upon the taxable property of Fremont precinct, for the purpose of paying interest on bonds issued for erecting a bridge across the Platte river. Upon referring to the clause of the petition upon this branch of the case, we find it to be in the following language:

"10. That the said taxes levied for said Fremont precinct bridge bonds were levied, collected, and threatened to be collected in violation of law and the right of said plaintiffs, and that said taxes were levied to pay for said bridge which was built on land not owned by private parties and not on any public road or highway, but as a toll bridge, and said precinct never contracted for nor had any right, title, or interest in said bridge nor become liable therefor."

It will be readily seen that the above allegations present no issue or question for the adjudication of this court. They are mostly in the form of recitals and present conclusions rather than facts.

It seems from the agreed state of facts that the entire proceeds of said bonds, amounting with the interest to one hundred and fifty thousand dollars, has, through mismanagement or ill fortune, or a combination of the two, been lost to the people of Fremont precinct. This is a serious loss to that people. Any defense which the law would permit them to make to

this indebtedness ought and doubtlessly would meet with the sympathy of the court, but I fail to find such defense in the facts set forth in the said petition.

There is one other point made by the plaintiffs against the said county tax. The facts upon which it is based are stated in the stipulation as No. 14, and are too lengthy to be inserted here. But they amount to this: That the First National Bank of Fremont, situated in said county, for the years in question was assessed and valued for taxation at only $50,000, when its average resources during said years were $248,884. We have already reached the conclusion, while considering this subject under another head, that the mere under assessment of one piece or species of property, while such under assessment will necessarily increase the rate of taxation on all other taxable property in the district from what it would have been had such under valuation not been made, yet that the board of equalization is the tribunal to remedy such wrong, and even if denied there, it cannot have the effect to render the whole scheme of taxation void. But there was no law, either constitutional or statutory, rendering the *resources* of national banks taxable, and the slightest examination of the subject will show that such law would be open to graver objections than any of the numerous ones which the plaintiffs have urged against the law as it now stands. Among the items going to make up these resources, I take from the copy of the report of said bank, which plaintiffs have attached to their petition as an exhibit, the following: "Current expenses and taxes paid $3,166.25." When taxes themselves become a subject of taxation we may expect to see opposition to their payment indeed. Upon an examination of the report it will readily be seen, what most people know without examination of all banks in this country, that its resources consist chiefly of de-

posits—money due to depositors; which we are bound to presume has been given in to the assessors by, and taxed to them.

The law providing for the taxation of the stockholders upon their shares of stock in such institutions is to be found on pages 97–8 of the laws of 1875, and for aught that appears in the petition or stipulation of facts in this case has been complied with by the authorities of Dodge county. But even if it has not, I know of neither principle nor authority making that a legal excuse to the plaintiffs for failing to pay the taxes on their property.

" 9. That the said Fremont city council, sitting as a board of equalization for each of the said several years 1876, 1877, and 1878 did, without any notice to the taxpayers or to the plaintiffs, raise the aggregate assessed value of each and every assessment in said city 10 per cent above the assessed value as made by the several assessors for said years. And said city so raised said valuation for the purpose of taxing the property in said city 10 per cent more than could have been levied as assessed. And said valuation of said plaintiff's premises and of all property in the said city was 10 per cent higher in its assessed value than the same was for county and state purposes assessed."

The city council, sitting as a board of equalization, had no power to raise the assessed value of all the property assessed in the said city. Such raising of the valuation is not equalizing in any sense. Counsel for defendant suggest that such action on the part of the city council is within the principle announced by this court in the case of *Dundy v. Richardson County*, 8 Neb., 508. In that case the county commissioners, sitting as a board of equalization, raised the assessed value of all the farm or acre lands of Falls city precinct 22 per cent. This was done presumably for the purpose of equaliz-

ing the assessment of such property with that of simi-
lar property in the other precincts of the county.  And
this the court held they could do upon certain condi-
tions.    But this would by no means apply to the action
of the city council.   They had nothing to do with the
assessments in the precincts or other cities of the
county.   The only values that were before them were
those of the property of the several persons and cor-
porations of their own city; and their only duty was
to equalize the assessments as between these so that
the burden of taxation might rest equally upon the
tax payers of the city in proportion to the true value of
their several taxable possessions.

   The general law governing cities of the class to
which Fremont belongs limits their power of levying
taxes to 5 mills on the dollar in any one year for gene-
ral revenue purposes and to an equal amount for gen-
eral improvement purposes [Gen. Stat., 142.], and it
appears from the agreed state of facts that the action
of the said city council was for the purpose of avoiding
the effect of the said limitation.   As well might this
court be called upon to sanction an open violation of
law, as a covert one, particularly when the intent to
violate it by indirect means stands admitted in the re-
cord.

   But while the additional value of ten per cent placed
upon said property by the city council cannot be sus-
tained as a basis of taxation, yet the said action of the
council does not vitiate the assessment as made by the
assessors.

   The stipulation or agreed state of facts contains the
following as the 11th and 12th clauses: " That the said
taxes so levied by the said city of Fremont, which was
upon the real estate and not upon personal property in
said city for streets and sidewalks, was so levied accor-
ding to the said valuation upon all the real estate with-

in the limits of said city, and not any part of said·levy was upon the personal property in said city, nor were said taxes for said purposes specially assessed against the property particularly benefited by improvements made thereby, but for the purpose of improving the streets and crosswalks of the said city generally whenever and wherever deemed necessary.

12. That the said taxes levied by the said city of Fremont listed and charged against plaintiff's said premises as "Sixth Street fund" were so levied by said valuation upon all the real estate in the city of Fremont, and no part thereof on the personal property within said city, and said taxes were levied for the sole purpose of widening said Sixth Street.     *     *     *

13. That the said city widened Main street from First to Sixth street for the length of five blocks only at a·heavy expense     *     *     *     to pay which there was by said city council levied a tax upon all the real estate in the city in proportion to said valuation thereof, and no part of said taxes was levied upon the personal property in said city for said purpose.     *     *     *

We have here presented the question whether the provisions of the second subdivision·of sec. 31, Chap. 9, of the General Statutes are repugnant to those of sec. 6 of article 9 of the constitution of 1875.

In an important case lately argued in this court involving a construction of the section above referred to, the court was undivided in the opinion that the provisions of said section applied to previous legislation, and that under them the corporate authorities of cities, towns, or villages could be vested with power to levy and collect but two kinds of taxes. 1st. By special assessments or by special taxation (two ways of expressing the same thing) of property benefited. This only for purposes of local improvements. 2d. For all other corporate purposes to assess and collect taxes; but such

Kittle v. Shervin.

taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. *Hanscom v. City of Omaha, ante page* 37.

Applying this view to the case at bar there is no difficulty in coming to the conclusion that the taxes embraced under the foregoing heads are illegal and void.

From these views I conclude that all the taxes levied by the authority of the city of Fremont upon the real estate of said city alone, and not upon personal property, and which taxes were levied upon all the real estate of said city and not confined to the property benefited by the local improvement for which the same were levied, as well as the one-eleventh part of all other taxes assessed by the authority of said city—being the taxes assessed upon the increased valuation of said property caused by the act of the council of said city in adding ten per cent to the assessed value thereof, as returned by the assessor, and which taxes went to make up the amount for which the property of the plaintiffs described in their petition was sold, as well as all of such taxes which entered into and constituted a part of the subsequent taxes paid by such purchaser upon the said real estate, should be deducted from the apparent amount of the lien of the said purchaser upon said real estate for and on account of such sale, purchase, and payments.

But J. T. Smith, the purchaser of said real estate for the said taxes, not being before the court nor a party to these proceedings, this court cannot pass upon his rights nor grant the relief to which from the above view the plaintiffs seem to be entitled.

The necessary parties not being before the court to enable the court to render an effective decree or judgment the cause is dismissed at the cost of the plaintiffs.

JUDGMENT ACCORDINGLY.