Hon. JNO. H. BURFORD, Chief Justice.
Hon. JNO. L M'ATEE,
Hon. JOHN C. TARSNEY,
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL,

Associate Justices.

* J. R. WALLACE *et al.* v. H. B. BULLEN *et al.*

(Filed June 27, 1898.)

*On Petition for Rehearing—Dissenting Opinion.*

*H. S. Cunningham, Attorney General,* and *T. H. Soward,* for petitioners.

*Horace Speed,* and *H. A. Smith,* per contra.

Dissenting Opinion by

McAtee, J.: By the courtesy of my brethren, and by reason of the importance of the matter, I would like to

*Opinion of the Court, 6 Oklahoma Reports, pp. 17 and 757.

say a word in the case of *Wallace v. Bullen*, before the case has gone out of sight and perhaps into history. I can never consent to lay down a principle or consent to the approval of an interpretation of the law which I believe destroys the fundamental rights of citizens.

The power of taxation is the power of destruction. It must be exercised with the profoundest care, and all of the courts and text writers have uniformly fully and firmly held that no power shall be exercised to take the property of a citizen under the power of taxation, except under express and explicit terms of statutory authority. In this case it is not necessary to say much. The whole matter has been thoroughly examined in the opinion filed in the case of *Gray v. Stiles*, (6 Okla. 455.)

There are two broad features of the law governing taxation. One is *valuation*, the other is *equalization*. The Organic Act of this Territory, as, indeed, the constitution of many of the states, perhaps all of them, provides that taxation shall be upon the "true value" of the property; and the statutes of this Territory, expressing the spirit of the Organic Act, provide expressly and emphatically that property shall be taxed according to its "true cash value," and in providing the method of taxation the statutes expressly provide how that true cash value shall be ascertained. The earlier articles of the chapter upon revenue provide the method by which the property shall be valued. The citizen and taxpayer must swear to his property, and must swear to its value. The assessor must swear to his return, and must swear to its value. He dare not prevaricate. If he does, he criminally offends. He must make his return on the value of the property, under oath, under the apprehension of

criminal reprobation and punishment, and when the statutes have thus expressly provided what the duty of the taxpayer shall be, and what the duty of the assessor shall be, and the individual assessments have been returned by the local assessors, to the township board, and the township board has acted upon these individual assessments, according to the method prescribed in the statute, the duty and functions and the power of ascertaining the cash value of the property is complete. Nothing further can be done in that direction. Beyond that the board of county commissioners of each county of the Territory are charged with the function of equalizing between the various townships, and beyond that still, when that ascertainment has been made, and the county clerk, in the discharge of his duty, has returned the county rolls to the auditor of the Territory, there remains, under the explicit contruction of the statute, but one duty for the board of equalization to discharge. That is the duty, under the express language of the statute, of equalization. No power is given to the territorial board, nor to the boards of county commissioners, to value property, neither by express terms nor by any just inference which can be drawn from those terms. The power is the power of equalizing alone. It is to reduce to an average, to reduce to a common standard, the valuations of the various counties as shown by the assessment rolls sent up from the county clerks of the various counties. It is to ascertain the average and to equalize them, and it cannot be argued that because the Organic Act provides that the property of the Territory shall be valued according to its true cash value for the purpose of taxation, and other provisions have been made by the statute for the assess-

ment and taxation of property, and that inasmuch as it has been ineffectually done, that therefore the power exists in the equalizing board to go on and assume the authority to value. No such power exists. Neither has any court, before the case of *Wallace v. Bullen*, declared that such a power existed.

It was suggested in that case that the case of *Black v. McGonigle*, 103, Mo. 192, made such a determination. It did not. And I challenge an examination of the case. The statute of the state of Missouri charged the board of equalization and the board of county commissioners not only with the duty of ascertaining the value of the property, but expressly authorized and directed them to do so, and Judge Black, in rendering the decision of the supreme court in that case, went no further. The board of county commissioners were charged and authorized, by the statutes of Missouri, while exercising their duties of equalization, also to ascertain the value of the property. That case does not affect the present interpretation; does not aid in the interpretation of our statute or our Organic Act.

But the jurisprudence of that state, in another case, and it will be conceded, upon higher authority, does assert the doctrine which I now contend for.

It is the case of *Paul v. Railroad Company*, 4 Dill. 35, in the United States circuit court for the Eastern district of Missouri, in which Judge Dillon, expressing the opinion of Mr. Justice Miller of the supreme court of the United States, and United States district judge, Treat, who sat with him in the case, expressly affirmed the limitation which I contend for, upon a state board of equal-

ization, which was authorized to "adjust and equalize
the aggregate valuation of the property of railroads."
The case was one in which the state board of equaliza-
tion undertook, while exercising its functions of equali-
zation, to raise the property of the railroad companies in
Pettis county, from $9,000 a mile to $26,000 a mile.   The
opinion of the court declared that "the law limited the
functions and powers of this body to the work of equali-
zation," and that the raising of the valuation of the rail-
road companies' property amounted to an assumption of
the functions and powers of an original assessment which
did not exist in the board, and that its functions and pow-
ers, under that statutory provision authorizing them to
equalize, were those of "adjustment   and   equalizing"
alone.

The recent case of *State v. Thomas*, handed down by the
supreme court of Utah, on the 2d day of October, 1897,
is now relied upon by the court here to sustain the power
of the territorial board of equalization to value property.
It is valueless in every aspect to promote the argument of
the court in the matter, since the opinion itself expressly
states that the state and county boards, whose jurisdic-
tion was drawn in question, acted within the power con-
ferred by the constitution and statutes.

The opinion of the court then  proceeds to  cite  the
statutes of the state, that:

"Section 71, relating to county boards, which reads as
follows:  'The board has power, after giving notice in
such manner as it may, by rule, prescribe, to increase or
lower any assessment contained in the assessment books,
so as to equalize the assessment of the property con-
tained therein, and make the assessment conform to the

true value of such property in money,' has been referred to by counsel for the defendants, and by comparison with subdivision 9 of section 82, referring to the powers of the state board, which reads: 'At such meetings to equalize the valuation of the taxable property of the several counties in this state for the purpose of taxation; and to that end, under such rules of notice to the county auditor of the county affected thereby, as it may prescribe, to increase or lower any assessment contained in the assessment book, and make the assessment conform to the true value in money of the property assessed.' "

It will therefore be observed that the statutory authorization is in the first instance directory to the board of county commissioners to increase or lower any assessment contained in the assessment book, "so as to make the assessment conform to the true value of such property in money," and that the state board of equalization is expressly directed to increase or lower any assessment contained in the assessment book so as, not only to equalize the assessment of property contained therein, but "to make the assessment conform to the true value in money," of the property assessed; and these boards are therefore expressly authorized, not only to equalize, but also to add to the value of any property contained in the assessment rolls or books, and are expressly, and by the statute of Utah, given the power to assess and value, as well as equalize, and the supreme court of that state, in rendering the decision in *State v. Thomas*, simply expressed the plain words of the statute of that state, which, in terms too plain to bear interpretation, expressly directs these boards to become assessing boards.

"There," said the judge, holding up a long envelope covered with authorities, "is a list of authorities upon

which I stand." The supreme court of Ohio, in *Chamberlin v. City of Cleveland*, 34 Ohio, 551; of Iowa, in two cases, *Royce v. Jenney*, 50 Iowa 679, *Harney v. Board*, 44 Iowa 203; the supreme court of Wisconsin, in *Kelly v. Carson*, 11 Wis. 2; the supreme court of Nebraska, in *Kittle v. Sherwin*, 11 Neb. 78, 17 N. W. Rep. 861; the supreme court of Indiana, *City of Indianapolis v. Sturdevant*, 24 Ind. 391; the supreme court of Oregon, in one case, that of *Oregon Steam Nav. Co. v. Wasco Co.*, 2 Oregon, 206; the supreme court of California, in *Patten v. Green*, 13 Cal. 329; *People v. Reynolds*, 28 Cal. 113, and *Wells-Fargo Co. v. State Bd. of Equalization*, 56 Cal. 194; the supreme court of Colorado, in *People v. Lathrop*, 3 Colo. 428; the supreme court of Missouri, in *Paul v. Railroad Co.*, 4 Dill. 35; the supreme court of Montana, in *State v. State Bd. of Equalization*, 46 Pac. Rep. 266; the supreme court of Illinois, in *Kimball v. Trust Co.* 89 Ill. 611; *Scannon v. City of Chicago*, 44 Ill. 269, and *Law v. People*, 87 Ill. 385; the supreme court of Idaho, in *Orr v. State Bd. of Equalization*, 28 Pac. Rep. 420, and all law-writers citing these very cases, drew the inference which is drawn in the case of *Gray v. Stiles*—that these boards of equalization, being charged with no other power than that of equalizing from the assessment rolls, cannot increase the aggregate valuation of property. They have no power to change the value of property as ascertained from the various assessment rolls from the various counties, except by such additions or subtractions as are incident to the calculations which are made for the purpose of equalizing, while retaining as closely as possible, the aggregate basis of taxation as made by the local assessors. And so the text-books declare:

Desty on Taxation, at page 496;Burrough on Taxation at page 235.

And Judge Cooley, in his work on taxation, at page 418, says that these tribunals are the mere creatures of the statute, and must look to it for all their powers, and refers to many of the cases which we have followed in *Gray v. Stiles* for his authority.

All the authorities draw that very inference.

So, also, the same interpretation is made in 25 American and English Encyclopaedia of Law, p. 247.

It may be stated to you that these cases do not bear upon the question, but I say, and stake my reputation as a judge and as a lawyer, and I invoke the learning and the industry of the bar of this Territory, and I challenge contradiction. The bar should inform itself upon the matter; a just determination should be had. It might indeed never come. It might indeed be that, when this matter goes to the supreme court of the United States, that the United States supreme court may apply that rule of interpretation which usually leaves to the supreme court of the Territory the interpretation of its own local statutes. If so, so be it. But I do not believe it, and I say now that this court has no power to do this thing, and that in doing it, it has undertaken to sanction that act which has raised the total valuation of the property in this Territory from $28,000,000 to $39,000,000, and to raise the possible indebtedness of the various municipalities of this Territory by an increase of $1,500,000; and I do not think that there is any justification for it on the part of the territorial board of equalization, except to avoid the federal statute of July 30, 1886, whereby con-

gress, trying to avoid the constant effort of the authorities in the territories to overtax property and to incumber the municipalities and people with indebtedness, enacted the law which prohibited the territorial authorities from taxing property to the extent of more than 1 per cent. upon the last annual assessment, and prohibited the municipalities of the Territory from incurring any liability in excess of 4 per cent. of the last annual assessment. I cannot but regard the action of the board here as an effort on the part of the territorial board of equalization to overrive the statutes, and to declare an interpretation which would aid the territorial authorities and the municipal authorities all over the Territory to incur indebtedness which is illegal and unjust, and in violation of the rights of the citizenship of the Territory, and which the people of this Territory ought not to be forced to pay.

And I therefore wholly dissent from the judgment of the court, and in doing so, refer to the views more fully expressed in *Gray v. Stiles*, 6 Okla. 455, and in the several opinions cited therein.